IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SPRINT NEXTEL CORPORATION,

Plaintiff,

v. Case No. 12-2159-JTM

THE MIDDLE MAN, INC., AND
BRIAN K. VAZQUEZ,

Defendants.

MEMORANDUM AND ORDER

This matter comes before the court on plaintiff's motion for preliminary injunction (Dkt. 5), motion for order to preserve evidence (Dkt. 6), and motion for expedited discovery (Dkt. 7). The court notes that in Sprint's combined reply (Dkt. 40), it withdraws its motion for expedited discovery. Therefore, that motion (Dkt. 7) is moot. After careful consideration of the evidence and the parties' arguments, the court is now prepared to rule on the other two motions. For the reasons explained below, the court denies the motion for preliminary injunction (Dkt. 5) and the motion to preserve evidence (Dkt. 6).

**I. Factual Background**

Sprint is a telecommunications company that sells wireless phones and other products and services. Sprint buys its phones from the manufacturer and then sells the phones to its customers at a discounted price. Sprint subsidizes this discount up front and then recoups the cost of the subsidy by requiring every phone purchaser to sign a Sprint phone service contract, guaranteeing Sprint a stream of payments. The contract is

necessary because Sprint orders manufacturer-installed software that restricts its phones to use exclusively on Sprint's networks. The Middle Man, Inc. is also in the business of selling phones. It runs a website (www.middlemaninc.com) that offers many different models of phones, including some identified as Sprint phones. Brian K. Vazquez is Middle Man's CEO.

Sprint claims that Middle Man and Brian Vazquez have been and continue to be engaged in an unlawful business practice that includes bulk purchases and resale of Sprint phones, theft of Sprint's subsidy investment in the phones, unlawful access of Sprint's protected computer systems and wireless network, trafficking of Sprint's protected and confidential computer passwords, and willful infringement of Sprint's trademarks.

Sprint alleges that the defendants acquire large quantities of Sprint phones from Sprint and/or its authorized dealers and through soliciting other co-conspirators to purchase Sprint phones in large quantities for the defendants' benefit. The defendants' scheme allegedly results in many broken contracts between the original phone purchasers and Sprint. According to Sprint, the defendants disable the manufacturer-installed software in the phones that restricts the phones access to Sprint's wireless system. This "hacking" or "unlocking" allows the defendants to resell the phones at a premium without requiring its customers to sign up for a Sprint service contract.

Pursuant to FED. R. CIV. P. 65, Sprint asks the court to issue a preliminary injunction preventing the defendants from participating in the bulk handset trafficking scheme Sprint has accused them of running. Additionally, pursuant to FED. R. CIV. P.

26(d), Sprint moves the court for an order directing the defendants to preserve certain physical evidence relating to this action—specifically, the Sprint phones defendant currently possesses or controls.

**II. Motion for Preliminary Injunction**

*A. Legal Standard*

As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal. *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991). In order to be entitled to entry of a preliminary injunction pursuant to FED. R. CIV. P. 65, the moving party must establish that:

> (1) [he or she] will suffer irreparable injury unless the injunction issues; (2) the threatened injury ... outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood [of success] on the merits.

*Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003) (quoting *Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1198 (10th Cir.1992). The movant must "establish that each of these factors tips in [its] favor." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188-89 (10th Cir. 2003). To obtain a preliminary injunction, a party "must make its case not by mere allegations, but by clear proof." *Snyder v. Am. Kennel Club*, 575 F. Supp. 2d 1236, 1240 (D. Kan. 2008). Such a remedy should not be granted unless the movant clearly and unequivocally meets the burden of persuasion. *See O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 976 (10th Cir. 2004).

*B. Analysis*

Under the evidence presented by Sprint at the hearing on February 11, 2013, the court finds no irreparable injury to justify granting the preliminary injunction. Irreparable harm is suffered "when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *See Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001). "Speculative harm does not amount to irreparable injury." *Am. Kennel Club*, 575 F. Supp. 2d at 1242. Therefore, claims of irreparable harm in the form of damage to one's business or reputation cannot be presumed and must actually be proved. *See id*. "[S]imple economic loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary damages." *Id*. at 1241.

First, Sprint's analogy between this case and the judgments it and other cell phone providers have won in prepaid phone cases is distinguishable. Both types of cell phones are sold by providers at a subsidized level. But providers are only able to recoup their subsidy in prepaid phones if the customer purchases service time from the provider. If a prepaid phone were to be resold and unlocked from the provider's restrictions, the provider would not be able to recoup its subsidy because the purchaser would not be required to pay the provider for service time. With a contract-based postpaid phone, the situation is different. The phone provider recoups its subsidy by requiring the purchaser to enter a phone contract, guaranteeing the provider with a stream of revenue, typically over a two-year period. Even if the purchaser unlocks the

phone and resells it, this does not end the duty to continue paying on the service contract.

Further, in this case, there is no evidence that defendants unlocked any Sprint phones. No evidence has been submitted to show any sales by defendants overseas. The testimony establishes that Vazquez generally purchases phones from people who sell them on online sites like eBay and Craigslist. Often, the online seller has just been eligible for an upgrade from Sprint, so they purchase the new phone and decide they would rather sell it and keep using their old phone. Vazquez buys the phone, checks its electronic serial number (ESN) to make sure the phone is not fraudulent, and resells it via The Middle Man. Bridgette Carson, Sprint's Director of Fraud Management, testified that this is not Sprint's intent for these new phones, but she could not testify to any concrete harm this causes Sprint.

Sprint makes seemingly inconsistent claims about the magnitude of the amount of damages at issue. First, Sprint claims that the defendants cost them a substantial amount of money by "stealing" Sprint's subsidy on phones that defendants buy from Sprint customers and resell at a higher price. But Sprint also claims that entering the injunction will not substantially harm defendants' business, because the number of phones defendant sells that the injunction would affect is small. These arguments conflict considering the relative positions of the parties: Sprint is a major publicly-traded corporation that holds nearly $50 billion in total assets, while the defendant's testimony establishes that he made a profit of $24,000 from The Middle Man last year. Sprint attempts to explain the apparent inconsistency by arguing that the aggregate

effect of Sprint phone resellers is substantial. However, Sprint has provided no proof that these defendants have caused it any monetary damages.

Sprint's subsidy is recouped by the phone purchaser who pays the monthly contractual bill. In the few examples provided by Sprint at the hearing, none of the Sprint customers ended their relationships with Sprint. None of the Sprint customers stopped paying their phone bills. The evidence suggests that Sprint recouped its subsidy on the new phones through their customers' contractual payments, despite the fact that the customers chose to resell the new phone and use an older phone.

Even if Sprint had provided this proof, it would need more alleged damage than simple economic loss to justify the injunction sought. *Am. Kennel Club*, 575 F. Supp. 2d at 1241. Sprint alleges a loss of goodwill from customers. But at the hearing Sprint did not provide any specific examples of customers who had cut ties with Sprint due to brand confusion or their choice to continue using their old phone after selling their upgraded one. According to Vazquez's testimony, Wilson Lighting, one example of a company Sprint alleged defendants to have harmed, continues to be a Sprint cell phone customer. Instead, as a result of Sprint's allegations, Wilson Lighting has dropped The Middle Man as its cell phone consultant.

Sprint claims that the defendants' sales of phones may confuse customers into believing they have purchased from an authorized dealer, leading to an increase in calls into Sprint customer service representatives by noncustomers. Sprint worries that if its customer service representatives turn down these people for not being true Sprint customers, Sprint's brand will be harmed. However, no evidence was offered to link

callers having this confusion to defendants, and the court cannot presume the truth of this claim of damage to Sprint's business or reputation. *See Am. Kennel Club*, 575 F. Supp. 2d at 1242.

In short, Sprint's austere allegations of injury are abstract at this point and do not rise to the level necessary to justify granting a preliminary injunction at this time. *See Am. Kennel Club*, 575 F. Supp. 2d at 1242. Sprint's failure to establish this issue in its favor results in the court denying its motion. *See Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188-89 (10th Cir. 2003).

**III. Motion to Preserve Evidence**

*A. Legal Standard*

The Federal Rules of Civil Procedure require the parties to take steps to preserve relevant evidence, including electronic and physical evidence. Thus, a specific order from the court directing one or both parties to preserve evidence is not ordinarily required. The courts have inherent power, however, to make such an order when necessary. *See United States ex rel. Smith v. The Boeing Co.*, 05-CIV-1073-WEB, 2005 WL 2105972, *2 (D. Kan. Aug. 31, 2005) (citing *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 135 (Fed. Cl. 2004). In such cases, the courts will be guided by the principles of equity, including consideration of the following factors: (1) how much of a concern there is for the maintenance and integrity of the evidence in the absence of an order; (2) any irreparable harm likely to result absent a specific order directing preservation; and (3) the capability of the party to maintain the evidence sought to be preserved. *Id.* (citing

*Capricorn Power Co., Inc. v. Siemens Westinghouse Power Co.*, 220 F.R.D. 429, 433 (W.D. Pa. 2004)).

*B. Analysis*

The court is satisfied that defendants are aware of their legal duty to preserve evidence that it knows or reasonably should know is relevant to the action. Middle Man states that it has a diligent electronic record-keeping practice to track its sales, purchases, and inventory. The court is convinced that Middle Man will make these records available to Sprint upon proper request in accordance with the Federal Rules. Additionally, Middle Man has made it clear that it will consent to an on-site physical inspection of its inventory by Sprint. For these same reasons, the court does not believe than any irreparable harm will result in the absence of an order directing preservation of specific evidence. All relevant evidence will be accounted for and discoverable by Sprint without the additional preservation tasks requested by Sprint. As for the third factor, the burden on Middle Man to perform the tasks Sprint requests would be greater than is necessary for the relevant information to be preserved. Relevant evidence sought by Sprint's preservation order includes the make, model, and International Mobile Equipment Identity (IMEI) number of each Sprint phone Middle Man has in inventory or sells. The preservation of this information can presumably be achieved through Middle Man's database in a more effective and efficient manner than digital pictures taken and reported by Middle Man to Sprint every fifteen days. Finally, in the hearing before the court on February 11, 2013, the court gave defendant Vazquez specific

instructions about the data he should collect going forward. The court incorporates those instructions in this order as well.

In conclusion, the court is not persuaded that a Preservation Order is appropriate, or that it would serve any useful purpose in light of the parties' existing legal obligations to preserve relevant evidence. Sprint's motion also appears to seek indirect injunctive relief by preventing Middle Man from continuing its normal course of business. The court has already denied direct injunctive relief. For these reasons, the court denies Sprint's motion to preserve evidence.

**IV. Conclusion**

In conclusion, the court finds that Sprint has not established that it will suffer irreparable injury in the absence of an injunction. The court, therefore, denies Sprint's motion for preliminary injunction. Additionally, the court denies Sprint's motion for an order to preserve evidence because it is unnecessary at this time.

IT IS THEREFORE ORDERED this 13th day of March, 2013, that the court denies Sprint's motion for preliminary injunction (Dkt. 5) and Sprint's motion to preserve evidence (Dkt. 6), as set forth above. Additionally, the court denies Sprint's motion for expedited discovery (Dkt. 7) as moot.

s/J. Thomas Marten
J. THOMAS MARTEN, JUDGE