IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SPRINT NEXTEL CORPORATION,

        Plaintiff,

v.                                               Case No. 12-2159-JTM

THE MIDDLE MAN, INC., AND
BRIAN K. VAZQUEZ,

        Defendants.

MEMORANDUM AND ORDER

This matter comes before the court on Sprint's Motion to Dismiss Defendant's Amended Counterclaim (Dkt. 45). Sprint argues that all of defendant The Middle Man, Inc.'s counterclaims should be dismissed for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6). After reviewing the parties' arguments, the court grants Sprint's motion in part and denies it in part.

The factual background has been adequately stated by the court in its March 13, 2013 Order (Dkt. 83).

**I. Legal Standard: Rule 12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give the defendant adequate notice of what the plaintiff's claim is and the grounds of that claim. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). "In reviewing a motion to dismiss, this court must look for plausibility in the complaint . . . . Under this standard, a complaint must include 'enough facts to state a claim to relief

that is plausible on its face.' " *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223–24 (10th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (clarifying and affirming *Twombly*'s probability standard). "The issue in resolving a motion such as this is 'not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims.' " *Bean v. Norman*, No. 008-2422, 2010 WL 420057, at *2, (D. Kan. Jan. 29, 2010) (quoting *Swierkiewicz*, 534 U.S. at 511).

**II. Analysis**

*A. Counts I and II*

Counts I and II of Middle Man's Amended Counterclaim seek declaratory judgment. In Count I, Middle Man asks the court to resolve the issue of whether Sprint's Terms and Conditions restrict Sprint phone purchasers from reselling their Sprint phones. In Count II, Middle Man asks the court to resolve the issue of whether they may resell pre-owned phones that contain, or are labeled with, the Sprint name and trademark, or identify the network on which the pre-owned phone was originally programmed to operate.

First, Sprint argues that counts I and II are "mirror images" of its claims against the defendants that should be dismissed because they "merely restate issues already before the court" as part of Sprint's affirmative case. From the outset, the court notes that the District of Kansas has stated that there is "no rule preventing the assertion of a

2

counterclaim merely because the theory relied upon is the converse of that in the complaint." *Blue Cross & Blue Shield of Kan., Inc. v. St. Paul Mercury Ins. Co.*, No. 89-4114-R, 1990 WL 41403, at *1 (D. Kan. Mar. 23, 1990) (citing *Iron Mt. Sec. Storage Corp. v. Am. specialty Foods, Inc.*, 457 F. Supp. 1158, 1161–62 (E.D. Pa. 1978)). Even though the court may dismiss the claims in its discretion, the court finds no need to do so here, because counts I and II of Middle Man's Amended Counterclaim are not "mirror images" of Sprint's claims.

Count 1 of Sprint's Complaint alleges breach of contract. However, Sprint claims that several different acts by the defendants make them liable for breach of contract: "(a) failing to pay for the monthly service charges; (b) failing to pay the ETF fees; (c) failing to activate the Phones on the Sprint wireless network; (d) reselling the Sprint Phones and related products and services; and (e) using the Phones for a purpose that could damage or adversely affect Sprint." Dkt. 1, p. 13. Count I of Middle Man's counterclaim seeks declaratory judgment on only one of these activities. Were this issue resolved in Middle Man's favor, it would not necessarily release Middle Man from liability on Sprint's breach of contract claim because of the several other actions that Sprint claims constitute breach by the defendants. Further, if Middle Man is held liable for breach of contract based on their failure to pay for the monthly service charges, the issue of whether the resale restrictions are valid may not even be addressed.

Count 6 of Sprint's Complaint alleges inducement of breach of contract by defendants. But again, the actions constituting the breaches of contract allegedly

induced by defendants are numerous. For the same reasons noted above, Count I of Middle Man's Amended Counterclaim is not a mirror image of Sprint's claims.

Sprint claims that Count II of Middle Man's Amended Counterclaim is duplicitous of Sprint's trademark infringement claim (Count 12 in the Complaint). Like its breach of contract claims, Sprint's trademark infringement claim includes several allegations that make it broader than Middle Man's claim. Sprint alleges that defendants are selling counterfeit Sprint Phones by using the trademark in a way that causes a likelihood of confusion and that constitutes a false representation of a connection between Sprint and defendants. Middle Man asks only for a declaratory judgment that selling a phone that has the Sprint trademark on it and identifying the phone as one that was initially programmed to work on the Sprint network are not illegal. Declaring these acts legal would not insulate the defendants from liability for the remaining illegal trademark usages alleged by Sprint.

Sprint also argues that the court should refuse to entertain the declaratory judgment actions on issues that have already been asserted as affirmative defenses. Indeed, other courts have taken this route. *See, e.g.*, *MGM Studios, Inc. v. Grokster, Ltd.*, 269 F. Supp. 2d, 1213, 1226 (C.D. Cal. 2003) (holding that where an affirmative defense has been asserted, "[s]eparately litigating that defense in a declaratory posture would not serve the purposes of declaratory relief . . . ."). Middle Man's Answer simply denies Sprint's claims regarding breach of contract and asserts no affirmative defenses that would cover the relief sought by their counterclaim. However, the Answer asserts as an affirmative defense that the "alleged use of Plaintiff's trademark is lawful under the

4

doctrines of fair use and exhaustion." Dkt. 37, p. 14. This defense is as broad as the declaratory judgment sought by Middle Man on the issue of trademark infringement. This affirmative defense will necessarily be resolved during the course of litigation, effectively rendering the counterclaim moot. Therefore, the court finds Count II of defendants' counterclaim redundant of its affirmative defense and dismisses the claim.

Finally, Sprint argues that Middle Man cannot bring Count I of its Amended Counterclaim because nowhere in its pleading does Middle Man allege that it purchased new phones from Sprint. The Declaratory Act requires an actual controversy. *Surefoot LC v. Sure foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008). Sprint argues that unless Middle Man alleges that it bought a new phone from Sprint, no "actual controversy" exists regarding the Terms and Conditions that bind Sprint customers. However, Sprint's Complaint accuses Middle Man of "inducing Purchasers to breach their contracts with Sprint." Dkt. 1, p. 17. Therefore, regardless of whether Middle Man purchased a phone from Sprint, an actual controversy does exist regarding Sprint's contractual relationship with customers. The court declines to dismiss Count I of the Amended Counterclaim.

*B. Count III*

Count III of the Amended Counterclaim alleges tortious interference with Middle Man's business expectancy by Sprint. To assert a claim for tortious interference with business expectancy, a plaintiff must allege: (1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendant; (3) that,

5

except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (4) intentional misconduct by defendant; and (5) damages suffered by plaintiff as a direct or proximate cause of defendant's misconduct. *Burcham v. Unison Bancorp, Inc.*, 276 Kan. 393, 77 P.3d 130, 151 (2003).

Middle Man's counterclaim fails to sufficiently plead the elements of the tortious interference claim. First, the claim does not plead any facts showing the existence of a business relationship between Middle Man and Sprint's customers. While it might be true that Middle Man can expect some Sprint customers ultimately to resell their phones to Middle Man and form a business relationship, it has pled no facts that Sprint's actions have interfered with a current, specific, existing business relationship or reasonably probable expectancy. The counterclaim does not list any particular clients or potential clients of Middle Man that ended the relationship because of Sprint's actions.

Second, Middle Man's claim does not sufficiently plead facts showing that Sprint engaged in intentional misconduct with knowledge of Middle Man's relationship or expectancy of relationship with customers. Middle Man alleges several actions by Sprint interfere with Middle Man's business relationships: (1) disguising the true cost of the wireless phones Sprint sells, (2) forcing disguised pricing into the wireless phone market through a scheme to unlawfully restrain trade, (3) prohibiting its customers from reselling their Sprint phones to third parties such as Middle Man, (4) attacking and harassing resellers such as Middle Man, and (5) affecting pricing of wireless phones by restricting competition in both the Kansas market and interstate. *See* Dkt. 37, ¶¶ 13, 15,

17, 19, 20 (incorporated into Count III by ¶ 38). Interestingly, as discussed below, these practices appear to affect Sprint's own business more than they do Middle Man's.

Middle Man's claim that Sprint is "attacking and harassing resellers such as Middle Man" rests solely on the fact that Sprint has brought this legal action. Sprint has a First Amendment right to petition the government, often referred to as *Noerr-Pennington* immunity. This right to petition has been extended to afford a party the right to access the courts. *See California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972). "While the *Noerr-Pennington* doctrine originally arose in the antitrust context, it is based on and implements the First Amendment right to petition and therefore . . . applies equally in all contexts." *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000); *California Motor Transp.*, 404 U.S. at 510; *Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155, 160 (3d Cir. 1988) ("The rule that liability cannot be imposed for damage caused by inducing legislative, administrative, or judicial action is applicable here."). The court finds that Middle Man has not pled any proper facts to show that Sprint attacks and harasses resellers.

Middle Man's allegations that Sprint disguises the true cost of the phones it sells and forces disguised pricing into the wireless market are not allegations of misconduct that damages Middle Man. Rather, Sprint's pricing scheme—selling the phones at a discount to entice buyers into service contracts—is what creates the opportunity for Middle Man's profitability. Middle Man resells phones at price levels between the full price of the phone and the subsidized price offered by Sprint with a service contract. Whether this pricing gap is created by misconduct is irrelevant because it does not

7

damage Middle Man. On the contrary, Middle Man's business plan seems to be based on the results of this alleged misconduct by Sprint.

The additional allegations by Middle Man rely on Sprint's contractual relationship with its own customers. Sprint's actions do not restrict customers from purchasing phones from Middle Man, nor do they restrict customers from reselling their phones to Middle Man after the Sprint contract date expires. Although Sprint's Terms and Conditions purport to restrict its own customers from reselling their Sprint phones while the contract is enforceable, Middle Man pleads no facts establishing that Sprint's contracts with its own customers are directed in any way at Middle Man. Without these facts, Sprint's own contractual relationships with its customers are not a plausible basis for intentional misconduct.

Third, Sprint cannot plausibly have had knowledge of any relationship between Middle Man and its business relationships prior to the misconduct alleged. This is because any person who would want to enter a business relationship with Middle Man to resell their phone would necessarily have been a Sprint customer first. Otherwise, they would not have a Sprint phone to resell.

As a result of the defects in its pleading, Middle Man has failed to state a plausible claim for tortious interference by Sprint. Accordingly, Claim III of the Amended Counterclaim is dismissed.

*C. Counts IV and V*

Counts IV and V of the Amended Counterclaim are state and federal antitrust claims against Sprint, respectively. Count IV alleges that Sprint unlawfully restrains

trade under Kan. Stat. Ann. 50-112 by engaging in an agreement with its authorized dealers that restrains trade or fixes prices by restricting customers' rights to activate phones on other networks and resell the phones to third parties. Count V alleges that this same conduct violates § 1 of the Sherman Act. The court finds Middle Man has failed to plead sufficient facts for either of these claims.

Under Kansas law, "any person injured or damaged by such an arrangement" has standing to sue for violations of Kan. Stat. Ann. § 50-112. *See* Kan. Stat. Ann. § 50-115 (2000). Thus, a private right of action is allowed against those who violate § 50-112, if the private plaintiff can show they were injured or damaged by the defendant's forbidden behavior. *See O'Brien v. Leegin Creative Leather Prods., Inc.*, 294 Kan. 318, 277 P.3d 1061, 1076 (Kan. 2012). Middle Man's claim makes conclusory statements that it "has been injured as a direct and proximate result" of Sprint's scheme, "due to Sprint retaining control over the pricing of phones for use on its network." Middle Man claims that such policies "may make it more difficult and expensive to procure pre-owned wireless phones programmed to be operated on the Sprint network." The court need not accept these conclusory and speculative statements as true, as they are not supported by well-pleaded factual contentions. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). With no well-plead facts alleging an injury or damage to it, Middle Man has no standing to pursue the claim. The court dismisses Claim IV of the Amended Counterclaim.

Count V suffers a similar fate. Count V claims that Sprint's tying Sprint phones and the Sprint network together violate antitrust laws. The court notes that Section 1 of

the Sherman Act does not create a private right of action for money damages. A private right of action for tying claims is conferred by Section 4 of the Clayton Act. *See* 15 U.S.C. § 15(a) (stating that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue.").

Middle Man claims this tying violation should be analyzed as a per se violation. The Tenth Circuit has established the elements of a per se tying violation: "(1) two separate products, (2) a tie-or conditioning of the sale of one product on the purchase of another, (3) sufficient economic power in the tying product market, and (4) a substantial volume of commerce affected in the tied product market." *Multistate Leg. Stud., Inc. v. Harcourt Brace Jovanovich Leg. and Prof. Publications, Inc.*, 63 F.3d 1540, 1546 (10th Cir. 1995).

Rather than designating one product as the tied product and the other as the tying product, Middle Man appears to claim that both of the products are at the same time tied and tying products. *See* Dkt. 35, p. 12. But the court finds that the products are not tied at all. Customers may purchase a brand new phone from Sprint for the full price without signing up to use the phone on the Sprint network. Additionally, customers can buy a phone from another phone distributor and then enter into a contract with Sprint to connect the phone to the Sprint network. Customers are not forced to buy either product; they do so for the phone discount subsidized by Sprint. Without a tying scenario that forces consumers to purchase both products, Middle Man has no basis to bring its antitrust claim. Therefore, the court also dismisses Count V for failing to state a claim.

## III. Conclusion

The court dismisses Count II as redundant to defendants' affirmative defense against its alleged trademark violation. The court dismisses counts III, IV, and V for Middle Man's failure to state a claim.

IT IS THEREFORE ORDERED this 25th day of March, 2013, that Sprint's Motion to Dismiss Defendant's Amended Counterclaim (Dkt. 45) is granted in part and denied in part, to the extent set forth herein.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE