IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SPRINT NEXTEL CORPORATION,

        Plaintiff,

v.                                                                                               Case No. 12-2159-JTM

THE MIDDLE MAN, INC., AND
BRIAN K. VAZQUEZ,

        Defendants.

MEMORANDUM AND ORDER

The court has before it dueling motions for judgment on the pleadings by plaintiff/counterclaim defendant Sprint Nextel Corporation and defendant/counterclaimant The Middle Man, Inc. *See* Dkts. 90 & 92. The parties each seek judgment on Count I of Middle Man's counterclaim. After reviewing the parties' arguments, the court is prepared to rule.

## I. Background

Middle Man buys and resells pre-owned wireless phones, including phones originally programmed to operate on the Sprint network. Typically, Middle Man buys these phones from consumers who sell them online at sites like Craigslist.com. The phones Middle Man purchases arrive in various states of use, from being unused and in the original packaging to showing signs of wear and tear.

Sprint filed suit in this case alleging, among other claims, that Middle Man induces Sprint customers to resell their phones in violation of their service agreement with Sprint. In Count I of its counterclaim, Middle Man seeks declaratory relief that the

terms and conditions agreed to by Sprint customers do not preclude them from selling the phones they purchased from Sprint.

The terms and conditions accompanying each new Sprint phone contain several clauses that are relevant to this issue. The contract states:

> **Restrictions on Using Services.**
> You can't use our Services: (a) in a way that could cause damage or adversely affect any of our other customers or our reputation, networks, property or Services; or (b) in any way prohibited by the terms of our Services, the Agreement, or our Policies. You cannot in any manner resell the Services to another party.

Dkt. 1, Exh. 1 at 6. On the last page of the contract, under the heading "Other Important Terms," the same language is found: "You cannot in any manner resell the Services to another party." *Id.* at 12.

The contract includes a "Basic Definitions" section, which provides definitions relevant to the issue:

> "Service" means Sprint branded or Nextel branded offers, rate plans, options, wireless services, billing services, applications, programs, products, or Devices on your account with us.

*Id.* at 5.

> "Device" means any phone, aircard, mobile broadband device, any other device, accessory, or other product that we provide you, we sell to you, or is active on your account with us; . . ."

*Id.* The last relevant section appears on the first page of the contract:

> **Nature of our Service.** Our rate plans, customer devices and features are not for resale and are intended for reasonable and non-continuous use by a person using a device on Sprint's networks.

Dkt. 1, Exh. 1 at 2.

2

The court must determine whether the above language precludes Sprint customers from reselling their pre-owned phones.

**II. Legal Standard**

Judgment on the pleadings is appropriate under Fed. R. Civ. P. 12(c) when the undisputed facts appearing in the pleadings and any facts subject to judicial notice entitle the moving party to judgment as a matter of law. *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012). A partial motion for judgment on the pleadings may be granted pursuant to Rule 12(c) in the same way that partial summary judgment may be granted pursuant to Rule 56. *See VNA Plus, Inc. v. Apria Healthcare Grp., Inc.*, 29 F. Supp. 2d 1253, 1258 (D. Kan. 1998) ("By analogy to the provisions of Rule 56, we find that a motion for partial judgment on the pleadings is appropriate"). Judgment on the pleadings should not be granted "unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law. *Park Univ. Enters., Inc. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006). Documents attached to the pleadings are exhibits and are to be considered in deciding a Rule 12(c) motion. *Park Univ. Enters., Inc.*, 442 F.3d at 1244.

**III. Analysis**

The parties have agreed that although there might be a hypothetical choice of law issue, the result is the same regardless of whether the court applies Kansas or federal contract interpretation rules. With no material discrepancies between Kansas law and federal law as to the principles of contract interpretation applicable here, this court need not decide the issue for the purposes of this motion. *See Henser v. Kephart*,

215 F.3d 1186, 1191 (10th Cir. 2000). With no dispute on the issue, the court applies Kansas law.

The construction of a contract is a matter of law to be resolved by the court. *Hart v. Sprint Commc'ns Co., L.P.*, 872 F. Supp. 848, 854 (D. Kan. 1994). In construing a written contract, the Court's job "is to ascertain and effectuate the parties' intentions whenever possible." *Payless Shoesource, Inc. v. The Travelers Companies, Inc.*, 585 F.3d 1366, 1369 (10th Cir. 2009). "The intent of the parties and the meaning of a contract are to be determined from the plain, general, and common meaning of terms used." *Wood River Pipeline Co. v. Willbros Energy Services Co.*, 241 Kan. 580, 586 (1987) (citations omitted). "[L]anguage used anywhere in the instrument should be construed in harmony with all provisions and not in isolation." *Id.* (citations omitted). Unless the contract is ambiguous, both the intention of the parties and the meaning of the contract must be determined exclusively from the instrument itself. *Park Univ. Enters., Inc.*, 442 F. 3d at 1244. "A written contract is not ambiguous unless two or more meanings can be construed from the contract provisions themselves." *Hart*, 872 F. Supp. at 854 (citing *Albers v. Nelson*, 809 P.2d 1194, 1197 (1991)). "Where a contract is complete and unambiguous on its face, the court must determine the parties' intent from the four corners of the document, without regard to extrinsic or parol evidence." *Kay-Cee Enterprises*, 45 F. Supp. 2d at 843.

The parties have each asked for judgment on the pleadings on this issue. Sprint argues that the terms and conditions unambiguously prohibit customers from reselling

4

their phones. Middle Man argues that they do not. The facts are not in dispute, so this is a question of pure contract interpretation.

The terms and conditions signed by every Sprint customer are unambiguous, thanks to the definition section provided in the contract. The "Restrictions on Services" section specifically states: "You cannot in any manner resell the Services to another party." As defined by the terms and conditions, "Service" means "Sprint branded or Nextel branded offers, rate plans, options, wireless services, billing services, applications, programs, products, or Devices on your account with us." Finally, "Devices" includes "any phone, aircard, mobile broadband device, any other device, accessory, or other product that we provide you, we sell to you, or is active on your account with us; . . ."

The terms and conditions and the definitions contained therein unambiguously restrict the resale of any phone that is active on the customer's Sprint account. The court must work backwards for the clearest explanation. "Devices" are categorized as those that: (1) Sprint provides the customer, (2) Sprint sells to the customer, or (3) are active on the customer's Sprint account. The definition of "Services" specifically includes only the category of devices "*on your account with us*," to the exclusion of the other categories. The contract states that the customer may not resell the Services to another party, and these definitions make it clear that "Services" refers to only the devices that are on the customer's Sprint account. Any phones that are not activated on Sprint's wireless network are not on the customer's Sprint account; therefore, these phones may be resold.

The qualifying language in the definitions section is straightforward. The terms and conditions are not a stand-alone contract, but are, as Sprint stated in its Complaint, "part of [the consumer's] service agreement [with Sprint]," which is provided to the consumer "at activation." When a phone is activated on the Sprint network, it becomes the instrument through which Sprint provides the consumer with wireless coverage. If the consumer could sell the activated phone to someone else, the purchaser of the phone would receive wireless coverage from Sprint without ever entering into an agreement with Sprint for such coverage. This is the situation the terms and conditions specifically prohibit.

Until activation occurs, the wireless phone provides no Sprint services to the consumer. The phone cannot be used until it is activated on a wireless network, at which point the consumer will have to agree to the provider's terms. Absent an agreement, coverage will not be provided. There is no risk that a consumer will utilize Sprint's network without paying for the privilege. This is also the case with wireless phones that were previously activated on the Sprint network but are not currently activated, either because the service agreement expired or because the consumer purchased an upgraded device.

**IV. Conclusion**

The court grants Sprint's motion for judgment on Count I of Middle Man's counterclaim to the extent that the resale prohibition covers phones that are activated on the Sprint wireless network. The contract unambiguously restricts this activity. The court also grants Middle Man's motion for judgment on Count I to the extent that the

contract does not prohibit the resale of phones that are not active on the customer's Sprint account.

IT IS THEREFORE ORDERED this 31st day of October, 2013, that Sprint's Motion for Judgment on the Pleadings (Dkt. 90) and Middle Man's Motion for Judgment on the Pleadings (Dkt. 92) are each granted in part and denied in part, to the extent set forth herein.

s/J. Thomas Marten
J. THOMAS MARTEN, JUDGE