IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SPRINT NEXTEL CORPORATION,

       Plaintiff,

v.                                Case No. 12-2159-JTM

THE MIDDLE MAN, INC., and
BRIAN K. VAZQUEZ,

       Defendants.

**MEMORANDUM AND ORDER**

Before the court is plaintiff Sprint Nextel Corporation's ("Sprint") Motion for Partial Summary Judgment (Dkt. 140). This case arises out of the resale of subsidized wireless phones purchased on customers' Sprint accounts. Sprint filed a thirteen count complaint against defendants The Middle Man, Inc., and Brian K. Vazquez and now moves for summary judgment on Count I, breach of contract, and Count III, tortious interference with a contract. As discussed below, the Motion is granted in part and denied in part.

**I. Background**

Consistent with the court's duty to view summary judgment facts in a light most favorable to the non-moving party, the following background is based on facts presented or admitted by defendants. (Dkt. 149). Sprint sells wireless phones to its customers at a net loss ("subsidy"). It then relies on monthly wireless service charges to recoup the subsidy and make profit. To ensure recovery of the subsidy, each subsidized

1

phone sale is subject to standard Terms and Conditions ("Terms") requiring each phone to remain on the Sprint wireless network for a minimum service term of 24 months. (Dkt. 1-1). The Terms also provide an Early Termination Fee ("ETF") to be assessed if the minimum term is not fulfilled. The Terms prohibit the resale of services, which includes any subsidized phone purchased on the customer's account. (Dkt 1-1).

Defendants are in the business of selling new wireless phones acquired from Sprint, other wireless providers, and customers of wireless providers. They sell used phones acquired from wireless customers and other sources. Defendants also consult with wireless customers to provide lower monthly rates for Sprint wireless service than are available directly from Sprint.[1]

On December 7, 2011, defendants purchased five subsidized iPhones on their Sprint account. All five purchases were subject to a 24-month service contract and required defendants to electronically assent to the Terms. Defendants transferred one of the phones ("Phone 1") to "Daniel Smith" on or before December 16, 2011, and another ("Phone 2") to "Linwood Queen" on or before December 9, 2011. Phones 1 and 2 were then activated on Smith and Queen's accounts. Phone 1 remained active on the Sprint network for a total of 6.63 months; Phone 2 remained active on the Sprint network for only 3.76 months. Defendants transferred another of the phones ("Phone 3") to Heritage Tractor ("Heritage"), who was already a Sprint customer, on December 12, 2011. Phone 3 was activated on Heritage's Sprint account and remained on the Sprint network for at

---

[1] The precise method defendants use to provide lower rates is unclear at this time and is not the focus of this suit. Defendants also consult other wireless providers' customers, but those relationships are not at issue in this case.

least 24 months. Phones 1, 2, and 3 were never activated on defendants' Sprint account and are the subject of Sprint's breach of contract claim.

On September 8, 2010, Heritage allowed defendants to purchase three Blackberry phones on Heritage's Sprint account. Sprint subsidized the phones and shipped them to defendants' address. Defendants purchased the phones from Heritage with cash or in-kind compensation. They purchased at least twenty-six other subsidized phones on Heritage's Sprint account in the same manner. These phones were never activated on Heritage's Sprint account and are the subject of Sprint's claim for tortious interference with a contract.

On February 25, 2014, the court issued an order confirming that the Terms apply to the transactions in question and prohibit the resale of a new phone purchased on a Sprint account. (Dkt. 118, at 6-7).

## II. Summary Judgment Legal Standard

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." FED. R. CIV. P. 56(a). Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Thom v. Bristol-Myers*

*Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party resisting summary judgment may not rely upon mere allegations or denials contained in its pleadings or briefs. *Id.* at 256. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Id.* Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *Id.* at 249–50. Once the moving party has carried its burden under Rule 56, the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)) (emphasis in *Matsushita*).

### III. Analysis

*A. Breach of Contract*

Sprint claims that defendants entered a contract subject to the Terms when they purchased the subsidized iPhones, then breached the Terms by reselling Phones 1-3.

Defendants argue that they did not breach the Terms because they fulfilled the 24 month service commitments for each "line," despite "transferring title" to Phones 1-3 to

other entities. (Dkt. 149, at 3). They contend that the contract requires only the fulfillment of the service commitment or payment of the ETF. (Dkt. 149, at 3).

Under Kansas law, the elements of a breach of contract claim are: "(1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to plaintiff caused by the breach." *Stechschulte v. Jennings*, 298 P.3d 1083, 1098 (Kan. 2013).

### 1. A Valid Contract Exists

Defendants concede assenting to the Terms and 24-month service commitments as part of the offer and acceptance when purchasing the five iPhones. (Dkt. 149, at 2). No genuine dispute exists as to the validity of the contract.

### 2. Consideration Is Sufficient

It is undisputed that Sprint provided phones, services, and a promise to provide services while defendants provided money and a promise to purchase services. Even in a light most favorable to defendants, Sprint pleads a prima facie case for sufficient consideration. Defendants do not oppose the facts presented. Rather, they argue that Sprint failed to prove consideration in its summary judgment brief by not explicitly arguing the element. Sprint contends that its argument for the existence of a valid contract subsumes consideration because no valid contract can exist without proper

consideration, and that the facts alleged support a finding of consideration. The court agrees.[2] No genuine issue of material fact exists on the issue.

### 3. Sprint Performed

It is undisputed that Sprint provided phones and services and was willing to provide future services under the Terms. No genuine issue of material fact exists as to Sprint's performance under the contract.

### 4. Defendants Breached Contract

The court previously held that the Terms are breached by the sale of a device purchased on a Sprint account. (Dkt. 118, at 6-7). The implication is that selling a subsidized phone – prior to Sprint's recovery of the subsidy via service fees – is a breach of the Terms. It is undisputed that defendants purchased Phones 1-3 on their Sprint account and sold them to Smith, Queen, and Heritage. Defendants do not expressly deny selling the phones, and admit having "transferred title" thereto by a "transaction." (Dkt. 149, at 3). They also admit being *in the business of selling* phones. (Dkt. 149, at 1). The court finds no reasonable inference that these "transactions" were anything other than sales.  Defendants' exhibits show that the phones were purchased on their Sprint account and were thus subject to the resale restriction in the Terms. (Dkt. 149-1, at 12). No genuine dispute of fact exists as to defendants' breach by reselling Phones 1-3.

---

[2] Sprint  cites the same Kansas case as the court and defendants for the elements of breach of contract claim, under which there are five elements, but skips the second element altogether, numbering its elements as (1), (3), (4), and (5).

Defendants attempt to dissociate the 24-month service commitments from the phones themselves to argue that no breach occurred. The argument runs as follows. Defendants obtained title to the phones and Sprint received a promise that defendants would buy 24 months of service. Thus, transferring title to the phones does not breach the Terms, because defendants purchased 24 months of service on the service lines ordered contemporaneous with Phones 1-3. Whether Phones 1-3 or other phones were used on those lines is irrelevant because the commitments were fulfilled. Therefore, according to defendants, no breach occurred. However, by arguing what conduct constitutes breach, rather than what conduct occurred, they argue a legal question – one already answered by the court's order interpreting the Terms. (Dkt. 118). Thus, defendants do not raise a genuine issue of fact regarding breach.

No genuine dispute of material fact exists as to elements (1)-(4) of Sprint's breach of contract claim. Summary judgment in favor of Sprint is proper as to liability on Count I for breach of contract.

### 5. Damages

"One who claims damages on account of a breach of contract must not only show the injury sustained, but must also show with reasonable certainty the amount of damage suffered as a result." *Venable v. Import Volkswagen, Inc.*, 519 P.2d 667, 674 (Kan. 1974). "The basic principle of contract damages is to make a party whole by putting it in as good a position as the party would have been had the contract been performed." *State ex rel. Stovall v. Reliance Ins. Co.*, 107 P.3d 1219, 1228 (Kan. 2005). Contract damages are limited to those "which may fairly be considered as arising in the usual course of

things, from the breach itself, or as may reasonably be assumed to have been within the contemplation of both parties as the probable result of the breach." *Kansas State Bank v. Overseas Motorsport, Inc.*, 563 P.2d 414, 415 (Kan. 1977). A party may recover as general damages those that "are the natural, direct, and proximate result of the breach," and as consequential damages those that were foreseeable consequences of the breach at the time of contracting. *Spencer v. Agnew*, 210 P. 485, 486 (Kan. 1922); *accord MLK, Inc. v. University of Kan.*, 940 P.2d 1158, 1164 (Kan. Ct. App. 1997); *see also* 24 WILLISTON ON CONTRACTS § 64:12 (4th ed. 1993 & Supp. 2014). Lost profits are recoverable as consequential damages if they (1) were "contemplated at the time of contracting," (2) are the proximate result of the breach of contract, and (3) are "shown with a reasonable degree of certainty." *MLK*, 940 P.2d at 1164. "Damages claimed which were not the proximate result of the breach of contract and those which are remote, contingent, and speculative in character cannot serve to support a judgment." *Id.* at 1165 (quoting *Apperson v. Security State Bank*, 528 P.2d 1211 (Kan. 1974)). Contract damages must not result in a windfall for the plaintiff. *Reliance Ins. Co.*, 107 P.3d at 1229.

Factual disputes exist as to causation and certainty of damages. Sprint claims the sales caused $2,864.29 in damages – revenue it would have collected had Phones 1 and 2 remained on the Sprint network for the duration of their contracts. Defendants argue the sales did not cause damages because they did not sell the phones out of the Sprint network, and the phones were activated on the network shortly after resale. Further, the record does not indicate that defendants caused the new owners of Phones 1 and 2 to terminate their service. These facts are material because Sprint must prove the damages

were caused by the breach. The dispute is genuine because, in light of the evidence, a reasonable jury could find that the damages alleged were not proximately caused by the sale, but by the independent decisions of the phones' new owners. It may also be reasonably determined that the amount of damages sought is uncertain and speculative because Sprint had no guarantee that the contracts would be fulfilled in light of the existence of an ETF. Defendants also argue that Sprint suffered no damage because the full 24-month service commitments originally associated with the purchase were fulfilled. A reasonable jury could conclude from this fact that Sprint has already been made whole for the breach and has thus suffered no damage.

Genuine disputes of material fact exist as to damages. Accordingly, Sprint is not entitled to damages for breach of contract on summary judgment.

### B. Tortious Interference with a Contract.

Sprint raises the claim of "Tortious Interference with a Contract" for the first time on summary judgment. (Dkt. 141, at 14). Count III of the Complaint asserts "Tortious Interference with Business Relationships and Prospective Advantage." (Dkt. 1, at 14). While related, Kansas law recognizes the two claims as distinct. *See Turner v. Halliburton Co.*, 722 P.2d 1106, 1115 (Kan. 1986). The Tenth Circuit has treated a new issue or claim raised at summary judgment as a motion for leave to amend the pleadings. *See Martinez v. Potter*, 347 F.3d 1208, 1211-12 (10th Cir. 2003); *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090-91 (10th Cir. 1991). The court does so here.

The Federal Rules of Civil Procedure set forth the procedure for amending a pleading:

> A party may amend its pleading once as a matter of course within: (A) 21 days of serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

FED. R. CIV. P. 15(a)(1). After the 21 days, a party may amended the pleading "only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). Courts should freely grant leave when justice so requires. *Id.*

The Supreme Court has determined that district courts should withhold leave to amend only for reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Denial for undue delay is appropriate "when the party filing the motion has no adequate explanation for the delay" and the delay results in prejudice to the nonmoving party. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) (quotation omitted) (denying leave to amend in a multi-year litigation where plaintiff learned of stipulations on which amendment was based more than six months prior to seeking leave); *accord Federal Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987). Leave to amend should be denied where the amendment raises new theories late in the litigation or plaintiff is "using Rule 15 to make the complaint 'a moving target.'" *Zokari v. Gates*, 561 F.3d 1076, 1086 (10th Cir. 2009) (quoting *Viernow v. Euphrides Dev. Corp.*, 157 F.3d 785, 800 (10th Cir. 1998)). Absent prejudice to the nonmoving party, "[i]f the underlying facts or

circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182.

Here, there is no indication that Sprint has acted in bad faith or attempts to create a "moving target" complaint. The original and proposed claims are related, and discovery for both would overlap to some degree. However, this litigation is more than two and a half years old, and discovery is now closed. Sprint offers no explanation for the late change of Count III. Defendants have not conducted discovery with the proposed claim in mind and will likely be prejudiced without further discovery. At this late stage of litigation, the amendment creates a danger of disadvantaging defendants at Sprint's benefit. The implied request for leave to amend the complaint is denied. Accordingly, Sprint's motion for summary judgment on proposed Count III is DENIED as moot.

IT IS ACCORDINGLY ORDERED this 9th  day of December, 2014, that Sprint's Motion for Partial Summary Judgment (Dkt. 140) is GRANTED to the extent that defendants are liable for breach of contract, and DENIED as to damages for breach of contract and leave to amend the pleadings.

 s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE