IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SPRINT NEXTEL CORPORATION,

Plaintiff,

v.                                                    Case No. 12-2159-JTM

THE MIDDLE MAN, INC., and
BRIAN K. VAZQUEZ,

Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court for sua spontae summary judgment on plaintiff Sprint Nextel Corporation's ("Sprint") claim for Breach of Contract against defendant The Middle Man, Inc. ("Middle Man") under FED. R. CIV. P. 56(f)(3). This action arises out of the resale of phones purchased from Sprint subject to Terms and Conditions ("Terms"). As discussed below, the court grants summary judgment in favor of Sprint for breach of contract against defendant Middle Man.

**I. Background**

Sprint filed a thirteen-count complaint against defendants Middle Man and Brian K. Vazquez on March 14, 2012. (Dkt. 1). Sprint alleged: Breach of Contract; Common Law Unfair Competition; Tortious Interference with Prospective Advantage; Civil Conspiracy; Unjust Enrichment; Conspiracy to Induce Breach of Contract; Common Law Fraud; Fraudulent Misrepresentation; Trafficking in Computer passwords, in violation of 18 U.S.C. § 1030(a)(6); Unauthorized Access, in violation of 18 U.S.C.

1

1030(a)(5)(C); Unauthorized Access with Intent to Defraud, in violation of 18 U.S.C. § 1030(a)(4); Federal Common Law Trademark Infringement and False Advertising, in violation of 15 U.S.C. § 1125(a)(1)(A) and (B); and Contributory Trademark Infringement. (Dkt. 1).

Middle Man filed a five-count amended counterclaim on November 7, 2012. (Dkt. 37). The court granted Sprint's Motion to dismiss Counts II-V of the counterclaim. Count I of the counterclaim sought declaratory judgment that the Terms do not prohibit purchasers from reselling phones. (Dkt. 85). Sprint moved for judgment on the pleadings as to Count I of Middle Man's counterclaim. (Dkt. 90). On February 25, 2014, the court determined that the Terms apply to the transactions in question and prohibit the resale of a new phone purchased on a Sprint account. (Dkt. 118, at 6-7).

On July 30, 2014, Sprint moved for partial summary judgment on Count I against Middle Man for Breach of Contract and Count III for Tortious Interference with a Contract. (Dkt. 140). The court granted partial summary judgment on Count I, finding in favor of Sprint on liability for Breach of Contract. (Dkt. 151, at 7). The court determined that a genuine dispute of material fact remained as to the causation and certainty of Sprint's claim for $2,864.29 in damages for the breach. (*Id.*, at 8). The court denied summary judgment on Count III. (*Id.*, at 9-11).

On December 18, 2014, Sprint moved for Entry of Final Judgment on Count I and Voluntary Dismissal of All Remaining Claims. (Dkt. 153). Sprint also asserted a waiver of substantial contract damages in favor of nominal damages. (*Id.*, at 2). The court granted the voluntary dismissal of all remaining claims, but denied entry of final

judgment because a finding of liability on a breach of contract claim without damages is not a final judgment. (Dkt. 157). Upon Sprint's waiver of substantial contract damages, the court notified the parties that it would consider summary judgment on Count I against Middle Man sua spontae pursuant to FED. R. CIV. P. 56(f)(3). (*Id.*, at 5).

This case is set for trial on February 3, 2015. Sprint's claim for breach of contract against Middle Man is all that remains of this dispute. The only outstanding issue as to that claim is damages.

## II. Uncontroverted Facts

Sprint sells wireless phones to its customers at a net loss ("subsidy"). It then relies on monthly wireless service charges to recoup the subsidy and make profit. To ensure recovery of the subsidy, each subsidized phone sale is subject to standard Terms requiring each phone to remain on the Sprint wireless network for a minimum service term of 24 months. (Dkt. 1-1). The Terms also provide an Early Termination Fee ("ETF") to be assessed if the minimum term is not fulfilled. The Terms prohibit the resale of services, which includes any subsidized phone purchased on the customer's account. (Dkt 1-1).

Defendants are in the business of selling new wireless phones acquired from Sprint, other wireless providers, and customers of wireless providers. They sell used phones acquired from wireless customers and other sources. Defendants also consult

with wireless customers to provide lower monthly rates for Sprint wireless service than are available directly from Sprint.[1]

On December 7, 2011, defendants purchased five subsidized iPhones on their Sprint account. All five purchases were subject to a 24-month service contract and required defendants to electronically assent to the Terms. Defendants transferred one of the phones ("Phone 1") to "Daniel Smith" on or before December 16, 2011, and another ("Phone 2") to "Linwood Queen" on or before December 9, 2011. Phones 1 and 2 were then activated on Smith and Queen's accounts. Phone 1 remained active on the Sprint network for a total of 6.63 months; Phone 2 remained active on the Sprint network for only 3.76 months. Defendants transferred another of the phones ("Phone 3") to Heritage Tractor ("Heritage"), who was already a Sprint customer, on December 12, 2011. Phone 3 was activated on Heritage's Sprint account and remained on the Sprint network for at least 24 months. Phones 1, 2, and 3 were never activated on defendants' Sprint account and are the subject of Sprint's breach of contract claim.

### III. Legal Standard

"After giving notice and a reasonable time to respond, the court may: . . . (3) consider summary judgment on its own after identifying for the parties material facts that may not  be genuinely in dispute." FED. R. CIV. P. 56(f). Summary judgment is proper if "there is no genuine dispute as to any material fact" and a party is "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *accord Celotex Corp. v. Catrett*, 477 U.S.

---

[1] The precise method defendants use to provide lower rates is unclear at this time and is not the focus of this suit. Defendants also consult with other wireless providers' customers, but those relationships are not at issue in this case.

317, 322 (1986). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party resisting summary judgment may not rely upon mere allegations or denials contained in its pleadings or briefs. *Id.* at 256. Rather, such party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Id.* Summary judgment may be granted if the opposing party's evidence is merely colorable or is not significantly probative. *Id.* at 249–50. The party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (quoting FED. R. CIV. P. 56(e)) (emphasis in *Matsushita*).

The court notified Middle Man of its intent to consider summary judgment on Sprint's breach of contract claim on January 13, 2015. (Dkt. 157). In light of the substantial treatment this claim already received on partial summary judgment, the parties' extensive briefings and exhibits, and the impending trial date of February 3, 2015, the court set a response deadline of January 19, 2015. Middle Man timely filed a response in opposition on January 19, 2015.

### III. Analysis

Under Kansas law, the elements of a breach of contract claim are: "(1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to plaintiff caused by the breach." *Stechschulte v. Jennings*, 298 P.3d 1083, 1098 (Kan. 2013).

The issue of liability, elements (1)-(4) of the claim, was resolved in favor of Sprint on partial summary judgment. (Dkt. 151). The court now turns to the final element of Sprint's breach of contract claim: damages.

### A. Breach of Contract Damages

Under Kansas law, a plaintiff who establishes liability for breach of contract is entitled to recover at least nominal damages.[2] *See Freeto Constr. Co. v. American Hoist & Derrick Co.*, 457 P.2d 1, 6 (Kan. 1969); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 346(2); *All West Pet Supply Co. v. Hill's Pet Prods. Div., Colgate-Palmolive Co.*, 840 F. Supp. 1433, 1440-41 (D. Kan. 1993). The Restatement articulates the rule as follows: "If the breach caused no loss or if the amount of the loss is not proved under the rules stated in this Chapter, a small sum fixed without regard to the amount of loss will be awarded as nominal damages." RESTATEMENT (SECOND) OF CONTRACTS § 346(2).

Having proved breach of contract against defendant Middle Man, Sprint is entitled as a matter of law to the nominal damages it now seeks. In opposition, Middle

---

[2] Nominal damages are: "1.A trifling sum awarded when a legal injury is suffered but there is no substantial loss or injury to be compensated. 2. A small amount fixed as damages for breach of contract without regard to the amount of harm." BLACK'S LAW DICTIONARY 447 (9th ed. 2009).

Man argues that Kansas law does not support nominal damages for breach of contract. So the argument goes, damages are an essential element to a breach of contract claim under Kansas law, and no Kansas case directly supports nominal damages for breach of contract, thus, actual damages, not nominal, are required to prevail on Sprint's breach of contract claim. The court is unpersuaded.

The court previously held in *All West Pet Supply* that nominal damages are allowed under Kansas contract law. There, the court determined that, although it found no cases on point, the Kansas Supreme Court would most likely follow the rule of the Restatement of Contracts (Second) § 346(2). Under Kansas law, it is essential to prove actual damages in order to recover them. Where, as here, no substantial damages are sought, the law supports a finding that the breach itself is proof of nominal damages, thus fulfilling the final element of a Kansas breach of contract claim.

## B. Sprint Has Not Waived Right to Breach of Contract Claim

"Waiver in contract law implies that a party has voluntarily and intentionally renounced or given up a known right, or has caused or done some positive act or positive inaction which is inconsistent with the contractual right." *United Am. State Bank & Trust Co. v. Wild W. Chrysler Plymouth, Inc.*, 561 P.2d 792, 795 (Kan. 1977).

Defendant argues that Sprint waived its right to a breach of contract claim by (1) activating phones that were sold in breach of the terms and conditions; (2) continuing to bill and receive payment from Middle Man on the lines originally associated with the phones sold in breach of the terms; (3) failing to notify Middle Man of the breach in accordance with the Dispute Resolution provision in the Terms.

The evidence does not support waiver here. Sprint employs an evolving anti-fraud program that aims to deter the activation of fraudulently or otherwise improperly procured phones. (Dkt. 149-2). The circumstances surrounding Middle Man's breach at issue in this case were not factual parameters that triggered Sprint's system at the time the phones in question were activated. (*Id.*, at 7-9). That is, when a phone was sold to one customer, never activated by that customer, and soon thereafter sold and activated on the account of another customer, no action was taken to prevent the later activation. Those facts now trigger an alert in that same system. *Id.* Whether Sprint employees controlling the activation of phones have contemporaneous access to those alerts is unclear. However, it is clear that Sprint has updated this alert program to aid enforcement of the Terms. The scope and quantity of data involved in such enforcement makes it no surprise that Sprint cannot identify all manner of breaches in time to prevent activation or collection of service fees on such phones. Sprint's logistical difficulties in policing its Terms are not actions or inactions inconsistent with its rights under the Terms. The actions taken by Sprint to stem breach of the Terms and fraud, including filing this action against Middle Man, are consistent with an intent enforce the no-resale provision of the Terms.

In support of its argument, Middle Man notes that "[g]enerally, where a party to a contract has knowledge of breach by the other party, yet continues to receive money in the performance of the contract, the breach will be deemed to have been waived." *Affiliated Foods Midwest Coop., Inc. v. Wolf Creek Marketplace*, No. 10-2012-JAR, 2011 WL 231420, at *4 (D. Kan. Jan. 24, 2011) (applying Nebraska contract law). Middle Man

argues that Sprint's continued collection of service fees from Middle Man on the service lines originally associated with the phones in question thus indicate waiver of the right to enforce the no-resale provision. However, other phones were activated on those lines and it would be illogical for Sprint to refuse payment on services rendered to enforce the resale clause. It would be similarly unjust to require Sprint to forego the primary purpose of the Terms, the provision of and collection on services, to avoid the waiver of a secondary purpose of the Terms, the prohibition on reselling subsidized phones.

Further, Middle Man fails to note pertinent language immediately preceding that on which it relies: "[t]o establish a waiver of some legal right, there must be clear, unequivocal, and decisive action of a party showing such purpose . . . ." *Id.* Thus, even if the continued receipt of money contributes to waiver under Kansas contract law, which is yet unclear, that receipt of money must be a clear, unequivocal, and decisive showing of purpose to waive the contract right. In light of the scope of Sprint's phone sales and its ongoing efforts to protect its contractual rights under the Terms, it cannot be said that its collection of service fees, activation of re-sold phones on new accounts, or continued collection of service fees on Middle Man's account are clear, unequivocal, and decisive action or inaction demonstrating that Sprint intends to waive the right to enforce the resale clause. Sprint has not waived its right to enforce the no-resale provision of the Terms.

There is thus no genuine issue for trial on Sprint's breach of contract claim. Sprint is entitled to nominal damages for breach of contract against Middle Man in the amount of $1.00.

IT IS ACCORDINGLY ORDERED this 26th day of January, 2015, that summary judgment is granted in favor of Sprint against defendant The Middle Man, Inc. for breach of contract with nominal damages of $1.00. All other claims against The Middle Man, Inc., and Brian K. Vasquez are dismissed.

s\ J. Thomas Marten
J. THOMAS MARTEN, JUDGE